## Boyer Trust

*Bruce L. Castor* and *Norman H. Brown*, for accountants.

*Robert Montgomery Scott* and *C. Suzanne Buechner*, for beneficiary.

*Thomas J. Timoney*, guardian-trustee ad litem

ADJUDICATION BY TAXIS, J., JANUARY 23, 1981:

The account is filed because of the death of Paul B. Branin, co-trustee, on March 5, 1975, and to resolve certain questions with respect to the administration of the trust. * * *

At the time of audit, the court was asked to interpret the language of Article Eighth, paragraph A, with respect to certain questions hereinafter more specifically set forth.

Decedent died on May 21, 1972, leaving a will dated March 10, 1971, and codicils thereto dated May 18, 1971, June 4, 1971, and January 18, 1972, not relevant here. At the time the will was executed, decedent was married and had two children: a daughter, Robin Hambro (a/k/a Mary Boyer Hambro), a resident of England; and a son, Markley H. Boyer,

a resident of the United States. By Article Eighth decedent created two trusts denominated Trust A and Trust B. The language of Article Eighth creating Trust A, the subject of the instant adjudication, is as follows:

> Eighth: (A) I give to Girard Trust Bank, Peter Godfrey and Paul B. Branin the sum of $1,450,000 to be held in trust as a separate and independent fund known as Francis Boyer Trust A, upon the following terms:
>
> (1) The said trustees shall pay currently all and every form of income produced by said Francis Boyer Trust A, including, without limitation, rents, interest, dividends, as well as gains and profits upon the sale of capital, to Francis Boyer Trust B hereinafter created.
>
> (2) The said trustees may distribute capital only of Trust A to my daughter, Robin Hambro, in such amounts and at such times, if any, as they in their sole discretion see fit.
>
> (3) On the death of my said daughter my trustees shall distribute any capital remaining in their hands to the said Francis Boyer Trust B.

The primary and only issue posed by the life tenant, Robin Hambro, and one trustee, James B. Sitrick, is whether the term "capital" used in Article Eighth includes appreciated assets. They take the position that any and all capital may be distributed to Mrs. Rambo, including capital with unrealized appreciation. No such distribution has yet occurred.

An examination of the will reveals that the decedent modified the ordinary concept of corpus and directed that only "gains and profits upon the sale of capital" be considered income to be distributed to Trust B. Decedent made no such provision for unrealized appreciation. According to Probate, Estates and Fiduciaries Code Section 8103, gain on assets in the trust corpus, realized or unrealized, is considered part of the corpus. An interpretation requiring that the trustee sell .any appreciated asset, realize the gain, and distribute the gain to Trust B, before the distribution of corpus to Mrs. Hambro, would impose a dollar limitation on the gift to Mrs. Hambro. Further, the decedent only employed the term "capital" in Article Eighth, a term employed in British law and practice. Under British law, capital always includes unrealized appreciation, and thus would not be taxed.

At the time of audit, counsel submitted a stipulation signed by all counsel and the guardian and trustee ad litem, the pertinent terms of which we now note. Counsel have agreed that, under British law and practice, the word "capital" is used to denote the principal or corpus of the trust. The stipulation notes that, at the time of the execution of the will, the British tax rate for joint net income of a husband and wife in excess of approximately $36,000 was 91.25% and British death tax rates ranged from 67% to 85%. For British tax purposes, the estate of an income beneficiary includes the portion of principal of any trust from which the beneficiary received income, whether or not the beneficiary had any control over the principal. However, the distribution of appreciated assets, as part of a distribution of capital, would not be subject to British income tax.

To clarify the definition of the term "capital," as employed by the testator, counsel for the life tenant, Robin Hambro, presented the testimony of H. Ober Hess, Esq., the scrivener of the will. Mr. Hess testified that the decedent understood that income from the trust would be taxed to his daughter at confiscatory British tax rates.

Mr. Hess stated that decedent further understood that, under the British tax scheme, upon the death of Mrs. Hambro, the corpus of the trust, the income from which was distributed to Mrs. Hambro during her life, would be included in Mrs. Hambro's estate and thus subject to heavy British death tax rates. However, should Mrs. Hambro not receive distributions of income from the trust but distribution of corpus, at irregular intervals, the corpus would be exempt from British death duties upon the death of Mrs. Hambro. Correspondence admitted by stipulation and identified at the time of audit and hearing reflect the planning to avoid the burdensome British tax scheme as it would be imposed against the share of decedent's daughter.

In light of the language of the will and the testimony of the scrivener of the will setting forth the circumstances surrounding the decedent at the time of the drafting and execution of the will and further setting forth decedent's understanding of the British tax laws, the court now rules that the

trustees may exercise their discretion to distribute appreciated principal of Trust A to Robin Hambro.

Accountants raise five other questions with respect to accounting principles to be used with respect to the phrase "gains and profits upon the sale of capital." The court is mindful that this phrase is found in Article Eighth creating Trust A. Therefore, it must be interpreted in a light consistent with decedent's intention to provide for the unique circumstances of his daughter.

Accountants first suggest that "gains and profits" should be determined by Federal income tax rules and not fiduciary accounting principles, thereby relieving Mrs. Hambro from paying income taxes on distributions to her from the trust, both British and Federal. Federal income taxation to this trust is avoided by the provision that all taxable items be distributed currently to Trust B. In keeping with such intention of the decedent and to achieve the desired result, the court rules that "gains and profits" shall be determined according to federal income tax rules.

Secondly, the accountants suggest that the phrase "gains and profits upon the sale of capital" requires that the gains be offset by losses and that only net gains should be distributable to Trust B. To avoid distribution to Mrs. Hambro which carry taxable income either for English or United States tax purposes, only those gains which generate taxable income (i.e. net gains) need be distributed to Trust B. To rule otherwise would be to frustrate the intent of the decedent because then all losses would reduce the capital available for distribution to Mrs. Hambro. The court therefore rules that only net gains shall be distributable to Trust B.

Thirdly, in connection with this question, the accountants suggest that the net gain should be determined over a period consistent with the method employed to determine gains subject to Federal income tax. Therefore, before a gain would be distributable to Trust B, it would be reduced by losses during the tax year and any losses which may be carried over from prior tax periods. The court agrees and so rules.

Fourthly, accountants ask whether the principles just

enunciated in determining and distributing gain should be applied with respect to receipts by the executors which were subsequently distributed to the trust. The initial bequest of $1,450,000 made in Article Eighth carried no net gains because it is a pecuniary bequest. Thereafter, Trust A received additional distributions under Article Twelfth of $2,874,625.22, which carried substantial net gain in 1972. Accountants note that there would be great difficulty in tracing the net gain and, furthermore, that the executors paid whatever income taxes were due with respect to gain realized in 1972. Finally, accountants state that net gains from 1975 and 1976 were offset by loss carryovers from 1973 and 1974. The court rules that no distributions from the estate to the trust carried taxable gain income and, therefore, none of the distributions include gain which is properly distributable to Trust B.

Accountants request that the income receipts from the executors of $718,729.95 and income receipts from the trustees under the will of Agnes C. Chauncey of $2,303.73 and paid over to Trust B as directed under Article Eighth, paragraph A, clause 1 be affirmed. The court concurs and so rules.

After noting the question whether appreciated assets may be distributed to Mrs. Hambro, the accountants ask the court to rule whether the distributions from Trust A to Trust B are received as principal or income in Trust B. Accountants have submitted for Trust B an accounting and petition for adjudication which raises this question which is more appropriately discussed in the adjudication for Trust B. * * *

As to Trust B:

* * * The accountants request that the court pass upon the question whether the funds now held in the income accumulation account for Trust B, containing the income distributed from Trust A, should be denominated principal or income for purposes of Trust B. * * *

In paragraph B of Article Eighth, decedent created a trust for the benefit of his issue as follows:

> (B) I give to Girard Trust Bank, Peter Godfrey and Paul B. Branin the sum of $50,000 to be held in trust as a separate and independent fund known as Francis Boyer Trust B upon the following terms:

(1) The said trustees may distribute current income to any person or persons who are issue of mine (excluding adopted children) in such amounts or proportions as they see fit or may accumulate the same in whole or part for future distribution to any such person or persons.

(2) When both of my children, Robin Hambro and Markley H. Boyer, have died my trustees shall distribute the capital of this Trust B as well as the accumulated income, if any, to the issue then living, per stirpes, of my daughter, Robin Hambro, and, if there be no such issue, to the then living issue, per stirpes, of my son, Markley H. Boyer, excluding in each instance adopted children.

Accountants pose the question whether the income distributions from Trust A to Trust B are income or principal in Trust B. The accountants have stated no position.

Although the purpose of the distribution from Trust A to Trust B is to remove all taxable income from Trust A so that distributions of capital from Trust A could not be characterized as distributions of taxable income, the term "all and every form of income" is defined in Trust A to include "gains and profits upon the sale of capital." Under Probate, Estates, and Fiduciaries Code Section 8103, gains and profits are ordinarily considered part of principal. Under paragraph B of Article Eighth, with respect to Trust B, the trustees are directed to distribute "current income." Decedent provided no definition of "current income" and, therefore we hold that the phrase "current income" retains its customary meaning under Pennsylvania trust law. Consequently, the court rules that the distributions from Trust A to Trust B shall be considered principal in Trust B. * * *